Please the court, Rachel Lee on behalf of Dr. Henrikson and Dr. Siguroa. I'd like to reserve five minutes of my time for rebuttal. Your Honors, this is a case in which these doctors were confronted with numerous complaints from those subjected to plaintiffs' bullying, demeaning, and abusive conduct. The complaints were facially, race, and sex neutral. Even though on this appeal we have to accept that a jury could find the complaints were driven by gender stereotypes. So in a qualified immunity appeal, the question is, would every reasonable official in their shoes understand that what he's doing by acting on those complaints violates her rights? And the answer here is no. In these particular circumstances of facially, race, and sex neutral complaints from victims of bullying, demeaning, and abusive mistreatment, the existing cases would not compel every reasonable official to conclude that acting on the complaints would violate her rights. But what if those were pretextual? So the court's, the district court's pretext analysis here was all premised on these complaints being stereotypical. And the, the district court found that a, a jury could find that these complaints were driven by gender stereotypes. But the existing case law and precedent involving stereotype, sex stereotype complaints would not compel every reasonable official to treat these as, these facially, race, and sex neutral complaints as stereotyped. You can see that most of the cases, or maybe all of the cases involving stereotyped complaints involve complaints that are expressly sex-based. You can see that from the Price Waterhouse case, where the complaints are, or the descriptions of the plaintiff were, you know, that she was macho, that she needed to walk more femininely, talk more femininely, dress more femininely, wear makeup. These are expressly sex-based complaints. Or Judge Gould's opinion in Nichols v. Azteca Restaurant. Now that's a retaliation case, not a disparate treatment case. But same thing. What you have there are expressly sex-based descriptions of the plaintiff in that case as, you know, a female prostitute. Those cases involve expressly sex-based complaints. Sex-phrased complaints. What we have here are facially, sex, and race neutral complaints of behavior that is bullying, it's demeaning, it's abusive. Existing case law did not compel every reasonable official to treat those the same way as the complaints in Price Waterhouse. Even in this- I guess the question, though, is when there's a determination that there's a factual question as to whether those legitimate reasons are pretextual, how does the qualified immunity analysis then lock in? So the pretext analysis here started with the premise that these- or the court's first reason in supporting the pretext finding was that these complaints were stereotypical. And as I've just discussed, the qualified immunity analysis would be, does the court's existing case law compel the plaintiffs- pardon me, compel the doctors to view these as the same way as the sex-based complaints in Price Waterhouse? Not so. The next part of- another part of the court's pretext reasoning was that the same kinds of complaints- there's no evidence that these complaints were being submitted from those who were being mistreated by male doctors. So again, that's just the flip side of- excuse me- the flip side of them being stereotyped complaints is that they're coming in- we have to assume coming in about the plaintiff, but there's no evidence that complaints were being submitted about male doctors. So again, we're just seeing- again, this is not a finding that the complaints themselves were not the reason for disciplining her and non-renewing her contract. This is, again, analysis about the stereotypical nature of the complaints. But aren't you effectively asking us to review the district court's finding that there was a factual dispute as to pretext? And I'm just not certain under the collateral order doctrine that we can view that. Or in light of prior Ninth Circuit precedent, Ballot v. McElveen, that where a district court finds a factual dispute as to pretext, how can we review it? So we accept that the district court found pretext, and we're not asking you to review the finding that there's sufficient evidence of pretext. But that evidence of pretext is all premised on these complaints being stereotyped, stereotypical, submitted about a female doctor and not about a male doctor. And so the qualified immunity question is, would every reasonable official under these circumstances understand that what he's doing by acting on the complaints violates her rights? And the existing precedent did not place that question beyond debate. It did not put every reasonable official under the pretext that he had to treat these as their... I guess the question is, you're asking us to find that they are sex-neutral, facially race-neutral. And isn't that the factual dispute? I don't think there's any dispute, Your Honor, that they are facially race and sex-neutral. There's nothing in the record to show that any of these complaints is phrased in terms of her being a woman, of her being too macho, of her needing to act more femininely, walk more femininely, take...wear makeup. Maybe so, maybe so. But I mean, what about the finding that there were 11 male physicians who had similar personalities or did similar things and didn't receive the same kind of discipline? Yes. Again, that's the flip side of these being what we have to accept as stereotyped complaints. They were submitted about her. There is no evidence in the record that there were...received any complaints from those who were subjected to bullying, demeaning or abusive conduct by male doctors. And so it just all goes back to, were they compelled to treat these facially neutral complaints as stereotyped when there was no existing case law that would have told them they had to treat these as stereotyped? And there's no case law saying that they had to stop getting complaints from those who were being victimized by male doctors. And so that's the second reason that the existing case law would not have compelled every reasonable official to understand that acting on these complaints would violate her rights. So are you asking for any ruling on...it seems that you agree that the...or you believe the ruling on the failure to stop harassment claim, and if that's the case, this court wouldn't have any...wouldn't have jurisdiction to review it. So I'm a little bit unclear what you're asking as to that claim. As to the failure to stop harassment allegation, we do believe that the district court granted summary judgment against it. But if this court, on reviewing the record, the procedural history, believes otherwise, believes that the district court did not grant summary judgment against it, then the district court denied summary judgment, denied qualified immunity, and we are asking then for a review of that denial. I'm a little confused here. What is your position on what the district court did with the hostile work environment claim? Our position is that the district court granted summary judgment against the hostile work environment claim. That's at ER 4-footnote 1. Is there any dispute about that, though? And that the district court's analysis of the hostile work environment claim included within it the failure to stop reasonable harassment...pardon me, the failure to stop harassment allegation. And that, therefore, the footnote where the district court says we're granting summary judgment against that included the failure to stop harassment allegation. So our position is the district court has granted summary judgment against it. Plaintiff takes a different position. If plaintiff is correct, then this court does, in fact, have jurisdiction to reach it, and the qualified immunity analysis is very, very simple. This Court's precedents we cited in the Bator and Rodriguez cases, the right that she's claiming there is predicated on there being a hostile work environment. And Judge Gould's decision in Nichols v. Azteca Restaurant to the same point. The right is predicated on there being a hostile work environment. The district court found, correctly found, there was no hostile work environment. Therefore, there was no right to be violated, and at a minimum, the right would not have been clearly established at the time. Did the parties ask the district court for clarification? It seems a little unusual to ask us to speculate as to what the district court did. No, Your Honor. The parties did not ask the district court to clarify it. Defendants moved for summary judgment against this allegation, and the district court, we believe, granted that. If there are no further questions, I'll reserve the remainder of my time. Counsel, I have a question, Judge Gould, if I may. What is the significance, if any, of the procedural context here? Judge Gould, the significance of the procedural context is that we are not permitted to challenge the district court's factual findings. Okay. Thank you. Thank you, Your Honor. May it please the Court, Steve Bruschetto, appearing for the plaintiff. Dr. Aruba-Balla. Your Honors, I'd like to begin by saying that we presently have a trial date in the district court commencing April 14th, extending through the 29th. We also have a motion from the defense to set over that trial date. We think that this appeal can be resolved expeditiously to allow this case to go to trial. The case is currently six years old. Dr. Balla separated from her employment seven years ago. Why has the case taken this long? The case has taken this long because of this appeal and COVID-19, and we'd like to get it resolved. Defendants in their briefs have raised a variety of arguments about why we raised so many jurisdictional and procedural arguments, and the answer is very simple. I'm sorry. Was there a question coming? The answer is very simple. We raised these jurisdictional and procedural arguments because we believe the case should be disposed of quickly in the Ninth Circuit. We think the case is ready for trial. We think the defense's motions have been heard and responded to, and it's time to get on with the case. With respect to the first issue they raised, and that is regarding the issue of qualified immunity on sex discrimination, no matter how they have phrased the question for qualified immunity, it addresses a question of fact. We've given you four cases, all of which say that essentially the employer's motive in making a termination is a question of fact that cannot be resolved on qualified immunity. Those start with Lee v. Amaro, a 2001 case, where the court in a race discrimination case said whether firing plaintiff was objectively reasonable because plaintiff performed his job so poorly is a factual argument, can't be reviewed. It continued in Thompson v. Small, a First Amendment case, where the Ninth Circuit said defendants claimed they demoted Mr. Thompson not for a Facebook post but for other offensive statements. Question of fact, not reviewable. It continued in Eng v. Cooley, where the Ninth Circuit said the causation element of a First Amendment claim is all a factual issue. Can we please go to your Section 1981 claim? Do you agree that after this court's en banc decision in Yoshikawa that there is no implied private right of action under Section 1981? You know, Yoshikawa says what it says, Judge. I'm not going to dispute that. I do think that is an issue that needs to be dealt with in the lower court. I don't see that as an issue for the Ninth Circuit on this appeal. The district court has ruled that there is an independent basis, independent evidence of race discrimination to support a 1981 claim, and it should be Judge Hernandez in the first instance to say whether or not plaintiff is entitled to assert her 1981 claim through Section 1983 or not. I mean, it's really as simple as that. That could only be a race-based claim, though. It couldn't be a combination of race and sex. Your Honor, I believe that there are three kinds of 1981 cases, and they depend upon what the evidence and the facts are. I believe there can be 1981 cases where the underlying conduct is both sex and race-based, and there can be 1981 cases where you have independent evidence of race, and there can be 1981 cases where sex is asserted, where there's sexual acts involving a person of color. But the bottom line here is the defense raised the issue of whether or not there are independent, there is sufficient evidence of race independent of sex. They got a ruling from the judge rejecting the claim that this is a combination case and agreeing with them that the case needs to be evaluated based upon race only. And ultimately, the Article III judge, Judge Hernandez, found sufficient evidence of race alone. So the status of the case right now in the district court is the judge has found that this is a race discrimination case involving a female of color. I'm unclear on your position. Are you saying that Judge Hernandez should decide both whether you can even make a 1981 claim or whether Judge Hernandez should just decide whether you have the opportunity to amend and replete your 1981 claim as a 1983 claim? Could you just clarify your position? Sure. My position is that that's a decision that Judge Hernandez will make on remand. And I think that I agree that the Ninth Circuit's decision will require a plaintiff, in this case, to rely upon Section 1983. I mean, the magistrate judge dismissed the Section 1981 claim or granted summary judgment on it, but then it doesn't seem that the district court explicitly discussed it, although it did say that it found no other error in the magistrate's recommendation. So is your position that the 1981 claim is actually still in the case now or that it's currently out and you want to bring it back in? Yes, it is in the case. The magistrate judge dismissed the 1981 claim and that was appealed to Judge Hernandez. Judge Hernandez reinstated the race discrimination aspect of the 1981 claim in his opinion. That's how you interpret it? That's how I interpret it. What does the 1981 claim add to this case beyond the 1983 claim? Is there some additional damages component? What it would add to the case really is a different... It's all going through 1983 now anyway under Yoshikawa, so I'm just trying to understand what the import of this... It used to be an independent claim. Now it's really not. Now it's really not, but it does affect different kinds of rights in that it affects interference with contract rights as distinguished from just general discrimination. So there would be a different set of kinds of underlying adverse actions that could conceivably be raised under a Section 1981 claim than under 1983 claim. Do you think you now need to replead this though in light of Yoshikawa? Yes. Have you asked the district court or that's pending this? I'm sorry. Have you asked the district court for leave to do that or is that all on hold pending this appeal? It's all on hold pending this appeal. We have not as of yet asked the district court to do that. On the qualified because there were no sex-based complaints that were made. How do you respond to that? I didn't hear the first part of the question, Judge. Your friend on the other side, I think her argument is this case, we should get qualified immunity because when people were complaining about your client, they were not doing so in sex-based terms. And her argument is that's in other cases. Yeah. I think the response to that is that those are all questions of fact to be resolved by the jury. Our view is that the complaints made about Dr. Baller were not sex-neutral. They were sex-biased. And ultimately, a jury is going to have to make that determination. Much of defendant's argument interprets the facts as they see them and not the facts and evidence as we see it. That is one of the facts where they resolve a factual dispute and say, these are sex-neutral. Other facts are whether the defendants honestly believe these complaints were true. We we've presented evidence that that is inaccurate. They say that this case is about Dr. Baller's behavior as being demeaning, harassing. We dispute that. We have evidence to the contrary. The evidence we presented was that she hadn't treated anyone in a rude, demeaning, harassing, or bullying fashion. That what she did was the same kind of conduct as males do to run an operating room. This woman is a highly specialized electrophysiologist, holding people's lives in her hands every day. And we don't think there is any evidence that she was demeaning or treated people in a bullying fashion. And the factual disputes go on from there. They say there is no evidence that pretext was used as a ruse here. We think that there is very specific evidence that pretext was used as a ruse here. In the sense of a ruse, there is evidence in the record that a complaint was made about Dr. Baller from operating room activities where she asked a med tech to keep quiet while she's operating on someone's heart. The med tech reported that she was being unprofessional. There were two investigations, one by Dr. Henriksen, who investigated witnesses and said that they all confirmed that Dr. Baller was terrifying the staff, that people were afraid to talk, that it was a safety hazard. Human Resources interviewed the same people and concluded that staff were telling her that Dr. Baller was perfectly appropriate, that there was a double standard, and that she was being treated differently than others. That's very clear evidence of using complaints as a ruse and a pretext. Their argument is, in its entirety, based upon interpreting facts in their favor, and that's one of the reasons it's not reviewable. Can I ask you about the qualified immunity? You appear to argue that you don't think the defendants ever raised that issue, but if I look at their summary judgment motion, it's replete with qualified immunity assertions, analysis. How can we find that they didn't raise that issue? Well, it depends upon what claim you're referring to. I don't believe that they raised a claim that there is no cause of action under Section 1981 based upon the combination of race and sex. Well, I'm just looking at SCR 22. The doctors are entitled to qualified immunity from plaintiff's under Sections 1983 and 1981, so they certainly have invocations of Section 1981 here, not 1983. For sure. They raised the issue under Section 1981 of qualified immunity. They raised the issue under Section 1983 of qualified immunity, but then they made the same argument in support of that for the race-based claims as they did for the sex-based claims, namely that there's all these complaints and that justifies them in taking the actions they did. And for the race-based claim, just as for the sex-based claim, that argument fails. It's not reviewable. I would like to just spend a moment. I have a minute left on the last issue, and that is the issue of whether the district court granted summary judgment against the failure to stop the defense. The defense did not move against this allegation in the complaint. They cite a provision in their brief, which they say is a motion related to this allegation, and when I look at it, it's not. It is merely a statement saying, here's the allegations in the complaint. Pay no attention to those allegations. What is, in your view, the status of the hostile work environment claim? Status of the hostile work environment claim. Hostile work environment claim, the court granted summary judgment against the hostile work environment claim. Is there any further clarification that you need on that claim in the district court? No, there isn't any clarification needed on that claim in the district court. I don't think you have jurisdiction to clarify it. I do think that the allegation that they failed to take reasonable action to stop unwarranted stereotypical complaints is not within the scope of the ruling on the harassment claim. I don't think that the court has addressed that. I don't think they moved on that. That's just a question of what evidence may be admissible. I'm sorry? That may be just a question of what evidence is admissible with respect to the claims the district court allowed. Right, and the district court allowed and considered evidence that they failed to take reasonable action to stop the unwarranted stereotypical complaints. That's part of the reason I think it's still in the case. Can I ask you a question? You started by saying you want to go to trial in two months, but if you then amend and replete your 1981 claim as a 1983 claim, there's no way you're going to go to trial on April 14th. You still want to reopen all of the litigation by pleading a new cause of action and all the motion to dismiss, motion for summary judgment, potential appeals that may intervene before a trial? I don't think that adding to the Section 1981 claim that it is based upon a cause of action under a private right of action under Section 1983 would involve any delay. And I think that if we approach Judge Hernandez about that issue and the case is ready for trial, I think that he would let it go to trial. I note my time is up. Thank you much. Thank you. We'll hear a rebuttal from Ms. Lee. Thank you, Your Honors. Responding to some of the points that counsel has raised, I will note that with regard to the Section 1981 claim, the claim that he is seeking leave to amend is a claim that he, a theory that he expressly disclaimed at the district court. At the district court level, plaintiff argued expressly in her briefing that her claim was combination race and sex discrimination and not race alone. And he has informed us today that he believes there are kinds of Section 1981 claims that can be combination race and sex, but neither in the briefing below nor in the briefing in this court nor today did he point to any such authority. Therefore, it's clear that the — that plaintiff has qualified immunity against a claim of combination race and sex discrimination because it was not clearly established. Therefore, it would be futile to grant leave to amend. In addition, as to the failure to stop harassment allegation, we expressly moved against that on — at SER 26. We sought qualified immunity, said that it could not be clearly established, listed that allegation. So we did move against that claim. His theory that we didn't move against that allegation is not borne out by the record. Is a dispute here whether this theory falls within the hostile work environment claim or some other claim? Is that what we're arguing over now? Yes. I think that that is the crux of the dispute is whether it's within the hostile work environment theory and thus was — summary judgment was granted against it or whether it's something else. Okay. So why is that — that seems like a question. Why is that a question for us as opposed to Judge Hernandez? We believe the record shows that the court treated it as a hostile work environment theory and granted summary judgment against it. Plaintiff is arguing that it survives and, therefore, if it survives, it is within this court's appellate jurisdiction. In addition, counsel argued that — so I'll point on the stereotyping claim. He said we're disputing the district court's factual findings, but the district court here specifically found that the plaintiffs gave credence to, which means believed, they gave credence to these complaints. He argues that there was evidence in the record from which a district court — pardon me — from which a jury could find that that was a ruse. He argues that on one of the particular investigations, the same people were interviewed by Dr. Hendrickson and Human Resources and generated different findings. But, in fact, the record reveals that Dr. Hendrickson and Human Resources interviewed a different set — different, non-overlapping sets of people. Dr. Hendrickson interviewed the actual complainant to hear what had happened. Human Resources did not. And so I'll direct the Court to S.E.R. 462 and S.E.R. 466 to 67 to show that, in fact, they did not interview the same sets of people and, therefore, it is understandable that they could have come away with different complaint — pardon me — different understandings of what occurred. And there is no evidence from which the district — from which a jury could find that it was a ruse. And I will finally conclude by saying he — we do not, for purposes of this appeal, challenge whether a jury could find the complaints were, in fact, driven by gender stereotypes. But what we have said is that they were facially race- and sex-neutral, and that is borne out by the record. He has not identified a single thing in any one of the complaints that is facially racial or racially sex- or race-based. None of these are phrased as facially sexist complaints, which is in contrast to the entire body of case law about expressly sexist complaints. And, therefore, regardless of what we believe about whether these were or were not driven by gender stereotypes, we'll accept for purposes of appeal they were driven by gender stereotypes. For purposes of qualified immunity, it was not clearly established that Dr. Hendrickson and Dr. Siguroa were prohibited from acting on these complaints. And so, unless there are any further questions, we would ask that the district court reverse — pardon me — that this court reverse the district court's denial of qualified immunity and direct entry of summary judgment in their favor on the first and second claims for relief. Okay, thank you. Thank you, Ms. Lee, and thank you, Mr. Brichetto. This matter is submitted. That concludes our arguments for this morning, and we'll stand in recess until tomorrow.
judges: GOULD, BRESS, KOH